## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

THOMAS HARVEY HINES,      )
                                       )

           Plaintiff,        )

                                       )

v.                            )     Case No. CIV-15-901-R

                                     )

                                     )

JOE M. ALLBAUGH,[1] et al.,     )

                                     )

           Defendants.    )

## <u>ORDER</u>

Before the Court is Magistrate Judge Shon Erwin's Report and Recommendation, Doc. 111, that the Court grant Defendants' Motion to Dismiss, Doc. 94, and dismiss all of Plaintiffs' claims with prejudice. Plaintiff objects. Doc. 112. In light of his objection, the Court, pursuant to 28 U.S.C. § 636(b)(1)(B), has reviewed the Report and Recommendation de novo. In doing so, it has liberally construed Mr. Hines's pro se filings pursuant to *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

For the reasons that follow, the Court will ADOPT IN PART the Report and Recommendation. Defendants' Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.

## I. Background

---

[1] Pursuant to Federal Rule of Civil Procedure 25, the Court has substituted Defendant Joe Allbaugh, the current director of the Oklahoma Department of Corrections, for its former director, Robert Patton, as the defendant to Mr. Hines's official capacity claims. As it pertains to Mr. Hines's claims against Mr. Patton in his individual capacity, those claims fail for reasons outlined below.

Plaintiff Thurman Harvey Hines has sued several Oklahoma state prison officials for his alleged treatment at the Oklahoma State Reformatory (OSR) in Granite, Oklahoma. Having since been transferred to the Davis Correctional Facility in Holdenville, Oklahoma, Mr. Hines claims that prison officials at OSR violated his constitutional rights in a number of ways[2] and caused him emotional distress. The Defendants are eight officials employed at the OSR and three officials employed by the Oklahoma Department of Corrections (DOC) in administrative positions.[3] Mr. Hines, who has sued all Defendants in both their individual and official capacities, seeks monetary, injunctive, and declaratory relief.

## II. Standard of Review

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A complaint must contain "sufficient factual matter, [which if] accepted as true . . . state[s] a claim to relief that is plausible on its face." *Id*. at 678 (quoting *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 570 (2007)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pled factual allegations must be viewed in the light most favorable to the plaintiff. *Beedle v. Wilson*, 422 F.3d 1059,

---

[2] Though a state prisoner, Mr. Hines may still press his constitutional claims under 42 U.S.C. § 1983 because the constitutional provisions on which he relies apply to the States through the Fourteenth Amendment. *Gee v. Pacheco*, 627 F.3d 1178, 1181 (10th Cir. 2010). Technically, then, all of Mr. Hines's claims fall under the Fourteenth Amendment. *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir.1996) (acknowledging that plaintiffs may have invoked the Fourteenth Amendment simply because the Eighth Amendment applies to the states only through the Fourteenth Amendment). To avoid any linguistic confusion, the Court addresses the claims according to which amendment provides the applicable substantive protections.

[3] The OSR Defendants include Tracy McCullom, Jennifer Morris, Heather Hill, Mitzi Estraca, Greg Kinnison, Dennis Hendrix, Bruce Bornheim, and Paula Bethea. The DOC Administrators include Joe Allbaugh, Mark Knutson, and Greg Williams.

1063 (10th Cir. 2005). Because Mr. Hines brings this suit pro se, the Court liberally construes his claims pursuant to *Haines v. Kerner*, 404 U.S. at 520–21. That said, Mr. Hines "still has 'the burden of alleging sufficient facts on which a recognized legal claim could be based.'" *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir.2008) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991)).

"Dismissal of a pro se complaint for failure to state a claim [under § 1915(e)(2)(B)(ii)] is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Nagy v. Spence*, 172 F. App'x 847, 848 (10th Cir. 2006) (unpublished) (quoting *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir.1999)). If the Court does dismiss a prisoner's petition, the Court should still explain the pleading's deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint. *Cf. Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir.2007) (reversing dismissal with prejudice, in part because of district court's failure to explain to pro se plaintiff what is required by Rule 8).

Mr. Hines's claims, when broadly framed, fall into one of five categories: (1) claims under 42 U.S.C. § 1983, (2) conspiracy under 42 U.S.C. § 1985, (3) First Amendment retaliation, (4) state law claims for intentional and negligent infliction of emotional distress, and (5) claims for declaratory and injunctive relief. The Court takes them up one by one. While the Court concurs with the findings of the Magistrate Judge as it pertains to some claims, it appears that the he did not address others.

### III. 42 U.S.C. § 1983 Claims

The Court first takes up Mr. Hines's claims under 42 U.S.C. § 1983.[4] Section 1983 provides that a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. The statute is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Because "Section 1983 does not allow plaintiffs to create a federal case out of every violation of state common law . . . the first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' " *Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017) (internal cites and alterations omitted).

Mr. Hines believes that Defendants have run roughshod over his federal rights in numerous ways. He alleges violation of his Fourteenth Amendment rights to due process and equal protection of the laws, as well as cruel and unusual punishment in violation of the Eighth Amendment.

## A. Due Process Claims

Mr. Hines points to several alleged due process violations. He first complains that several defendants—Morris, Hendrix, Hill, McCullom, Patton, Williams, Allbaugh, and Kinnision—violated his due process rights in disciplinary hearings at OSR by failing to provide him with videotape of his alleged misconduct, restricting his ability to call

---

[4] It does so while concurring with the Magistrate Judge's finding that Mr. Hines's claims for monetary damages must be against the Defendants in their individual capacity due to Eleventh Amendment immunity. Claims for injunctive and declaratory relief are against the Defendants in their official capacity and are discussed in Part VII of this Order.

witnesses, providing biased hearing officers, and producing evidence insufficient for a conviction. The Magistrate Judge recommended dismissing these claims for Mr. Hines's failure to show that these disciplinary hearings in any way infringed on a protected liberty interest. The Court agrees.

"The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005). This guarantee applies to prison inmates, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Harrison v. Morton*, 490 F. App'x 988, 992 (10th Cir. 2012) (unpublished) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). In order for a prison inmate to show that his disciplinary proceedings have implicated a protected liberty interest, an inmate must show that he was "subjected to (1) conditions that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life or (2) disciplinary actions that inevitably affect the duration of his sentence." *Harrison v. Morton*, 490 F. App'x 988, 992 (10th Cir. 2012) (alterations and quotes omitted).

Mr. Hines's due process claim fails because he has shown neither of these things. Nowhere does he allege that these disciplinary actions affected the duration of his sentence. And while he claims in his Objection that he was subject to atypical and significant hardship through disciplinary segregation and the restriction of visitation and canteen rights, he does not elaborate on how his hardship qualifies as significant. Consequently, that due process claim is dismissed for failure to state a claim.

Mr. Hines's second due process claim consists of allegations that several officials—Patton, Knutson, McCullom, and Bornheim—inappropriately denied the grievance complaints he filed with prison staff. The Magistrate Judge also found this claim failed as a matter of law: Mr. Hines failed to plead facts showing these Defendants were personally involved in a way sufficient to trigger liability under § 1983. That determination was correct. Mr. Hines allegations amount to no more than the argument that these Defendants must be complicit because they denied his grievances. His claims essentially seek to impose supervisor liability on these Defendants, which the Court may not entertain under § 1983: "[Section] 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). Consequently, the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

Mr. Hines does not address this legal shortcoming in his Objection. Instead, he insists the denial of his grievances violated federal law but does not explain how. And he contends that the Magistrate Judge improperly construed one of his "misconduct appeals" as a "grievance appeal." None of this, however, rectifies the deficiency: the denial of a grievance alone does not invite liability under § 1983.

There are two other way ways Mr. Hines believes Defendants violated his due process rights: (1) failing to follow prison policy and procedures during his disciplinary hearings and (2) denying him access to the courts by refusing to give him an ink pen. While

the Magistrate Judge did not address these claims in the context of due process, they too fail in any event.

As for Mr. Hines's complaints about prison officials ignoring DOC policy, he must point to some way in which Defendants trampled upon his federally secured rights in order to state a claim under § 1983. Yet all Mr. Hines mentions is a failure to abide by DOC evidentiary standards in his disciplinary hearings. That allegation will not suffice because the violation of a prison policy does not state a claim for the violation of a constitutional right. *See, e.g., Williams v. Miller*, No. 16-6346, 2017 WL 2438128, at *6 n.14 (10th Cir. June 6, 2017) (unpublished); *see also Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation."); *see also Hostetler v. Green*, 323 Fed.Appx. 653, 657-58 (10th Cir. 2009) (noting a defendant's mere violation of a prison regulation does not equate to a constitutional violation).

Nor does Mr. Hines's complaint about not being given an ink pen by the OSR Law Library Supervisor, Paula Bethea,[5] come any closer to stating a due process claim. To be sure, an inmate has a constitutional right of meaningful access to the Courts, meaning prison officials must provide Mr. Hines with a "reasonably adequate opportunity" to present his legal claims. *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977); *Petrick v. Maynard*, 11 F.3d 991, 994 (10th Cir. 1993). Practically

---

[5] To the extent that Mr. Hines has tried to assert this claim against other prison officials based on their affirming the decisions of inferior officials, it again bears emphasizing that the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

speaking, this standard requires prisoners be afforded paper, writing implements, stamps, and access to notary services, as well access to an adequate law library or legal advisor. *Bounds*, 97 S.Ct. at 1496–97; *Petrick*, 11 F.3d at 994.

But Mr. Hines must still have standing. He must show that the denial of an ink pen— *i.e.*, access to courts—prejudiced him. "A prisoner must demonstrate actual injury from the interference with his or her access to the courts; this principle derives from the doctrine of standing." *A.M. v. New Mexico Dep't of Health*, 148 F. Supp. 3d 1232, 1271 (D.N.M. 2015); *see also Harmon v. Keith*, 383 Fed.Appx. 770, 771 (10th Cir.2010) (unpublished) ("An inmate lacks standing to raise a right-of-access claim unless he is able to demonstrate actual injury.").

Again, he has not made this showing. And it is doubtful he could even if the Court granted him leave to amend. He complains of a lack of access to the courts despite having filed this lawsuit. Moreover, even if Defendants did improperly deny Mr. Hines legal supplies, then "[a]t worst, defendants' misconduct temporarily, but not fatally, delayed, and did not unreasonably hinder, the filing of [his] claims." *Purkey v. Green*, 28 F. App'x 736, 742 (10th Cir. 2001) (unpublished). His § 1983 claim based on his alleged hindered access to the Courts is therefore denied.

In conclusion, Mr. Hines has failed to state a plausible claim under 42 U.S.C. § 1983 for the denial of any due process rights. Those claims are therefore dismissed.

## B. Eighth Amendment Claim

Mr. Hines also complains that Defendants Hill, Estraca, and Kinnison violated his Eighth Amendment rights by depriving him of hygiene supplies, twice for a two-week

period and once for thirty days. Mr. Hines seems to suggest that he eventually contracted lice and was forced to purchase shampoo. The Magistrate Judge did not address this claim, at least as it pertains to damages under 42 U.S.C. § 1983. As explained in more detail below, he instead analyzed whether Mr. Hines had stated a claim for First Amendment retaliation based on the deprivation of hygiene supplies. Because the Court must liberally construe Mr. Hines's Complaint, it will examine his Eighth Amendment claim.

The Eighth Amendment "imposes duties on prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care . . . '" *Whitington v. Ortiz*, 307 F. Appx. 179, 186 (10th Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970)). Those duties include providing tools for basic hygiene. But to impose liability for an Eighth Amendment violation, a prisoner must show two things. First, the alleged deprivation must be objectively and sufficiently serious—meaning that "mere discomfort or temporary adverse conditions which pose no risk to health and safety do not implicate the Eighth Amendment." *Id.* at 187. Second, the prison official must have a culpable state of mind— that is, he must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.*

Mr. Hines's Eighth Amendment claim fails on both counts. While the "deprivation of [hygienic] items for an extended period of time can implicate the Eighth Amendment," Mr. Hines still needs to point to some "actual injury resulting from the lack of these hygiene products." *Gross v. Koury*, 78 F. App'x 690, 694 (10th Cir. 2003). He is yet to do so. Granted, he asserts that he "had to go to the Medical Staff for Shampoo for lice." Doc. 91,

at 11. But his Complaint does not assert he suffered severe discomfort as a result. And even assuming he had, he still needed to allege that prison officials knew of his condition. He makes no such allegation.

## C. Equal Protection Claim

For Mr. Hines's lone claim under the Fourteenth Amendment's equal protection clause, he argues that Defendant Paula Bethea discriminated against him on the basis of his race. Bethea, he claims, limited black prisoners' access to the law library on four different occasions without restricting white inmates' access.

"Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 659 (10th Cir.2006) (emphasis added; quotation omitted). Defendant Bethea might have restricted Mr. Hines's library access. But Mr. Hines still needs to allege that he has been injured in some way. *See Marsh v. Newton*, No. 97-2157, 1998 WL 39235, at *2 (10th Cir. Jan. 30, 1998) (unpublished op.) (absence of actual injury is fatal to an equal protection claim based on lack of access to a law library). Just as with his alleged denial of an ink pen, Mr. Hines points to no injury. His equal protection claim thus fails.

## IV. Retaliation

Mr. Hines also alleges retaliation, arguing that prison officials retaliated against him for exercising his First Amendment right to appeal disciplinary actions and complain about prison conditions. How they retaliated against him closely relates to his other alleged constitutional violations, which is why his retaliation claims are difficult to isolate from his other § 1983 claims. In other words, Mr. Hines first and foremost argues that Defendants

violated his constitutional rights in the ways previously addressed. But he also alleges that prison officials acted with retaliatory motive. For example, Defendants did not just deprive him of certain procedures in his disciplinary segregations. They did it specifically to retaliate against him for complaining about prison conditions.

To state a claim for First Amendment retaliation, Mr. Hines must allege that "(1) he was engaged in a constitutionally protected activity; (2) the defendants caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' action was substantially motivated as a response to [Mr. Hines's] exercise of constitutionally protected conduct." *Turner v. Falk*, 632 F. App'x 457, 460 (10th Cir. 2015) (citing *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir.2007)). To satisfy the third prong, Mr. Hines must show that "but for the retaliatory motive," prison officials would not have engaged in the allegedly unconstitutional conduct. *Id*.

The Magistrate Judge recommended dismissing Mr. Hines's retaliation claims as conclusory, reasoning that he had not alleged facts showing Defendants acted with retaliatory motive. For the most part, the Court agrees. Mr. Hines more or less argues that because Defendants allegedly deprived him of procedural rights in evidentiary hearings, denied his emergency grievances and appeals, placed him on grievance restrictions, and violated their own DOC policy and procedures, they must have been acting with a retaliatory motive. Mr. Hines points to no other facts that allow the Court to plausibly infer that Defendants acted with retaliatory motive—with one exception.

That exception relates to Mr. Hines's claim against Defendants Hill and Estraca for depriving him of hygiene supplies on three occasions. The Magistrate Judge recommended

dismissing that claim. In his view, a temporary deprivation of hygiene supplies is not the type of injury which would "chill a person of ordinary firmness from continuing to engage in the activity." *Turner*, 632 F. App'x at 460. And further, there was no retaliatory motive, since Mr. Hines did not allege (1) that defendants were aware of his protected activity; (2) that he complained of Defendants' actions; and (3) that the retaliatory action was in close temporal proximity to his protected activity. *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010).

The Court cannot agree with either conclusion. For one, Mr. Hines claims that he complained of prison conditions over the course of several months—undeniably protected activity. *See, e.g., Strope v. Cummings*, 381 F. App'x 878, 883 (10th Cir. 2010). All the while, Defendants denied him of hygiene supplies—twice for a period of two weeks and once for a period of thirty days. The Magistrate Judge dismissed this "temporary deprivation," reasoning that that it was merely "coincidental" that Hill and Estraca allegedly deprived Mr. Hines of hygiene supplies near the time that Mr. Hines made known his stated intention to sue prison officials. Of course, "temporal proximity between protected activity and a challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim." *Small v. Crosley*, No. 13-CV-00292-REB-MJW, 2015 WL 901524, at *2 (D. Colo. Feb. 27, 2015). But when drawing all inferences in favor of the non-movant on a motion to dismiss, the fact that prison officials—who no doubt recognized Mr. Hines as a litigious prisoner—deprived him of hygiene supplies numerous times suggests that the deprivations were more than coincidental. And further, the Court agrees with the point Mr. Hines raises in his Objection: depriving an inmate of hygiene supplies

for these periods would chill a person of ordinary firmness from continuing to appeal disciplinary actions.[6] In light of this, the Court cannot adopt the Magistrate's recommendation that all of Mr. Hines's retaliation claims be dismissed. Mr. Hines has stated a claim for retaliation against Defendants Hill and Estraca based on the deprivation of hygiene supplies. The Court therefore declines to adopt that portion of the Report and Recommendation.

## V. Conspiracy

Just as Mr. Hines's 42 U.S.C. § 1983 and retaliation claims are intertwined, so too is his claim for conspiracy. Mr. Hines argues that officials at OSR (Morris, Hendrix, McCullom, Knutson, Hill, Williams, and Allbaugh) conspired to deprive him of due process in his disciplinary proceedings in retaliation for his complaining about his conditions of confinement. The Magistrate Judge analyzed his claim under § 1983, finding that his conclusory allegations failed to state a claim for conspiracy. While the Court agrees that the claim fails, it departs from the Magistrate Judge's reasoning.

The Magistrate Judge should have analyzed Mr. Hines's conspiracy claim under § 1985(3)[7] rather than § 1983. And that distinction matters: "[A] § 1983 claim generally

---

[6] And to be sure, that Mr. Hines did in fact press his suit in federal court and continue to complain about prison conditions—meaning that his conduct was not chilled—does not bar his retaliation claim. While the Court's research suggests that the Tenth Circuit has yet to address the question of whether a person stating a First Amendment retaliation claim must show he was deterred, courts have generally held that a plaintiff need not have suffered an actual, subjective "chill" to assert a retaliation claim. *See, e.g., Gill v. Calescibetta*, 157 F. App'x 395, 397 (2d Cir. 2005) ("[I]n proving adverse action, a prisoner need not demonstrate an actual or subjective chill—that is, any dissuasion from further exercising his own rights."); *see also Hoye v. Lt. Gilmore*, No. 7:15-CV-00203, 2016 WL 3512275, at *3 (W.D. Va. June 20, 2016), *aff'd sub nom. Hoye v. Gilmore*, No. 16-7040, 2017 WL 2615449 (4th Cir. June 16, 2017); *Lashley v. Wakefield*, 483 F. Supp. 2d 297, 300 (W.D.N.Y. 2007).

[7] Section 1985(3) creates a private cause of action against those who, among other things, "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection

describes a substantive violation of a right secured by the Constitution or laws, whereas a § 1985(3) claim generally describes a conspiracy of two or more persons for the purpose of depriving of another of equal protection of the laws or equal privileges and immunities under the laws." *Dixon v. City of Lawton, Okla.,* 898 F.2d 1443, 1447 (10th Cir. 1990). Further, "[§] 1983 requires that a defendant have acted under color of state law, while § 1985(3) does not." *Id*. Section 1985's final requirement—and the one that matters here— is "proof that a conspirator's action was motivated by a class-based, invidiously discriminatory animus; there is no such requirement under § 1983." *Id.*

Nowhere does Mr. Hines allege this last element. Instead, he insists that officials conspired against him as punishment for complaining about prison conditions. Granted, Mr. Hines does make vague references throughout his Complaint to "racial discrimination." *See* Doc. 91, at 10–13. He never alleges, however, that the motive for the conspiracy was racial. He merely says that he complained of Ms. Morris's "racial discrimination" without providing any other details on how she discriminated against him. And while, as previously explained, he complains that Ms. Bethea illegally restricted his library access because of his race, nowhere does he link Ms. Bethea's actions to a conspiracy with others. Consequently, these are the types of vague conclusory allegations that will not state a claim under *Iqbal* and *Twombly*. *See, e.g., Davis v. Bear*, 537 F. App'x 785, 789 (10th Cir. 2013) (affirming dismissal of pro se prisoner's § 1985 conspiracy claim

---

of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). The Court construes Mr. Hines's conspiracy claim as falling within § 1985(3), rather than §§ 1985(1)-(2), neither of which apply to Mr. Hines's claims. Section 1985(1) affords a private right of action against those who conspire to prevent a person from holding office under the United States. Section 1985(2) provides a private right of action against those who conspire to obstruct justice. 42 U.S.C. §§ 1985(1)-(2).

"on the ground plaintiff failed to allege the discriminatory animus required for a violation of § 1985(3)" and noting that his mere allegation that he was African-American and that defendants were Caucasian would not suffice). The Court therefore dismisses Mr. Hines's conspiracy claim.

## VI. Claims for Emotional Distress

Mr. Hines's final claim for monetary damages is for negligent and intentional infliction of emotional distress. Mr. Hines alleges that several Defendants were involved in inflicting emotional distress, but the only one he specifically ties to his allegations is Defendant Morris.[8] He claims that on two different occasions, an inmate or inmates threatened him, one time with a knife, telling him that he was foolish for complaining about prison conditions and for planning to sue Ms. Morris. Both incidents allegedly caused Mr. Hines severe emotional distress, as Mr. Hines lost control of his bowels on both occasions and was forced to seek additional medication for depression, emotional distress, and post traumatic stress disorder. Mr. Hines claims he still suffers from nightmares about prison officials transferring him from facility to facility and encouraging gang members to assault Mr. Hines.

The Magistrate Judge dismissed the claim because Mr. Hines had not shown serious bodily injury. That determination is correct, at least as it pertains to his ability under 42 U.S.C. § 1983 to recover for emotional injury. While the Court agrees with the Magistrate

---

[8] He does allege that he informed Defendants Hill, Estraca, and Kinnison about Ms. Morris's behavior, but the officials apparently declined to take any action because Mr. Hines refused to provide any specific details on Ms. Morris's actions. Consequently, Mr. Hines's claims against Defendants Hill, Estraca, and Kinnison for intentional and negligent infliction of emotional distress do not allege the type of personal involvement required to make the claims plausible.

Judge that it is difficult to ascertain Mr. Hines's precise claim, he still should have considered whether Mr. Hines had stated a state-law tort claim for intentional and negligent infliction of emotional distress.

### A. Damages for Emotional Distress under 42 U.S.C. § 1983

At the very least, Mr. Hines is attempting to recover under § 1983 for his emotional distress. As a prisoner he must therefore, pursuant to 42 U.S.C. § 1997(e), identify some physical injury, as defined in 18 U.S.C. § 2246(4):

> [a] bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

This Mr. Hines has not done. "[A] prisoner cannot satisfy Section 1997e(e) by alleging only that he suffered from the physical manifestations of mental or emotional injuries." *Hughes v. Colorado Dep't of Corr.*, 594 F.Supp.2d 1226, 1238 (D. Colo. 2009) (citations omitted). *Cox v. Zavislan*, No. 11-CV-02554-RM-MEH, 2014 WL 5477794, at *13 (D. Colo. Oct. 23, 2014). Mr. Hines does not allege that his loss of bladder function was in any way protracted. And his nightmares are the exact type of mental harms which do not entitle him to damages for emotional distress under § 1983. So to the extent Mr. Hines is seeking damage for emotional distress under 42 U.S.C. § 1983, his claim is barred.

### B. Negligent and Intentional Infliction of Emotional Distress

He could, however, be pressing state-law tort claims against Ms. Morris for intentional or negligent infliction of emotional distress. His claim against her in her official capacity is barred by the Oklahoma Governmental Torts Claims Act. Okla. Stat. tit. 51, §

155(25) (state of political subdivisions shall not be liable if a loss or claim results from operation of any prison, jail or correctional facility); *Phillips v. Glanz*, No. 14-CV-480-TCK-TLW, 2015 WL 729686, at *5 (N.D. Okla. Feb. 19, 2015) (dismissing state prisoner's claims against prison officials in their official capacity).

His claims against Ms. Morris in her individual capacity are a different matter. His claim for negligent infliction of emotional distress is simply one for negligence. "[N]egligent infliction of emotional distress is not an independent tort, but is in effect the tort of negligence." *Wilson v. Muckala*, 303 F.3d 1207, 1213 (10th Cir. 2002) (citing *Kraszewski v. Baptist Med. Ctr. of Okla., Inc.*, 916 P.2d 241, 243 n. 1 (Okla.1996)). Mr. Hines must therefore identify (1) a duty on the part of Defendant Morris to protect him from injury; (2) a failure of the defendant to perform the duty; and (3) an injury to the plaintiff resulting from the failure. *See Chenoweth v. City of Miami*, 240 P.3d 1080, 1083 (Okla. Civ. App. 2010). Oklahoma law imposes on prison officials the duty of "reasonable care and diligence to protect those in [their] custody from known or reasonably perceivable dangers[.]" *Seiler v. City of Bethany*, 746 P.2d 699, 700 (Okla. Civ. App. 1987). Given that Ms. Morris would have breached that duty if she was encouraging inmate-on-inmate violence and that Mr. Hines has identified the manifestations of his emotional distress, the Court finds that Mr. Hines has stated a claim for negligent infliction of emotional distress.

These same facts also compel the conclusion that Mr. Hines has stated a claim for intentional infliction of emotional distress. The tort requires a plaintiff to prove that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the

emotional distress was severe." *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 855–856 (10th Cir. 2005) (applying Oklahoma law). The torteasor's conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. at 856. Further, the setting in which the conduct occurred—here, prison—must be considered when determining whether the conduct was extreme and outrageous. *Id*. And the plaintiff's emotional distress must have been so severe that no reasonable [person] could be expected to endure it." *Id*.

Rather than analyze Mr. Hines claim for intentional infliction of emotional distress as a standalone tort claim, the Magistrate Judge simply analyzed it as seeking damages for emotional distress under 42 U.S.C. § 1983 and dismissed the claim as conclusory. He also concluded, however, that even if Mr. Hines could show bodily damage, Morris's behavior was not outrageous, intentional, or the cause of extreme emotional distress. On this last point, the Magistrate Judge reasoned that because Mr. Hines was already taking medicine for his mental impairments, his having to take more of his medication did not mean he suffered extreme emotional distress.

The Court has trouble concurring with the Magistrate Judge on any of these points. Taking Mr. Hines's allegations as true, Ms. Morris intentionally instructed other inmates to threaten Mr. Hines. How else the other prisoners could have known about Mr. Hines's lawsuit against Ms. Morris is not clear, and it is not a point the Magistrate Judge addresses. Further, whether in prison or not, encouraging a person to physically assault and threaten another with a knife surely seems intolerable. In addition, the Magistrate Judge's

conclusion that Mr. Hines could not have suffered severe emotional distress because he was already taking medication for mental health issues does not make much sense. If he was already taking medication, then his emotional distress was more than likely extreme since he lost control of his bowels despite already being medicated. In light of this, the Court finds that Mr. Hines has stated a claim for intentional and negligent infliction of emotional distress against Defendant Morris.

## VII. Other Relief Sought

### A. Declaratory Relief

Lastly, the Court quickly addresses the other relief sought by Mr. Hines. He seeks several types of injunctive and declaratory relief. First, he asks for a declaration that Defendants have violated his civil rights, their constitutional duties, and criminal laws (18 U.S.C. §§ 241, 242). The Magistrate recommended that the Court dismiss Mr. Hines's claims for those types of relief, and the Court agrees. His sought-after declaratory relief is superfluous and a declaration that Defendants have violated criminal statutes is inappropriate in this civil rights case.

### B. Injunctive Relief

Mr. Hines also seeks several types of injunctive relief. He wants the Defendants at OSR to allow him to purchase an ink pen and to comply with their own policy and procedures in disciplinary hearings. These claims are moot, however, because Mr. Hines is no longer incarcerated at OSR in Granite, Oklahoma, having since been transferred to Davis Correctional Facility in Holdenville, Oklahoma. *See* Doc. 112, Ex. 1. Mr. Hines argues in his Objection that injunctive relief is still appropriate because he is subject to the

same treatment. But because Mr. Hines has not sued any officials at Davis Correctional Facility, the Court cannot enter injunctive relief against them. As for his argument that Director Allbaugh can still provide relief as Director of the ODOC, as explained above, Mr. Hines has not shown he is entitled to such relief.

The Magistrate Judge also correctly concluded that this Court should decline to enter injunctive relief ordering Mr. Hines's transfer to North Fork Correctional Facility in Sayre, Oklahoma. The Magistrate Judge found the doctrine of prudential mootness weighed against a federal court ordering the transfer of a state prisoner:

> Even if a case is not constitutionally moot, a court may dismiss [a] case under the prudential mootness doctrine if the case is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.

> *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011).

In his Objection, Mr. Hines contends that exceptional and compelling circumstances command his transfer. But the Court can identify none that warrant it ordering his transfer. All his claims for injunctive relief are therefore denied.

## VIII. Conclusion

To sum, the Court ADOPTS IN PART the Report and Recommendation, Doc. 111. The Court finds that Mr. Hines has stated claims for

- First Amendment retaliation against Defendants Hill and Estraca in their individual capacities based on the deprivation of hygiene supplies;

- Negligent infliction of emotional distress against Defendant Morris in her individual capacity;

- Intentional infliction of emotional distress against Defendant Morris in her individual capacity.

The Court DISMISSES all other claims. Defendants' Joint Motion to Dismiss, Doc. 94, is thus GRANTED IN PART and DENIED IN PART. In light of this ruling, this matter is re-referred to Magistrate Judge Shon Erwin for further proceedings consistent with the original referral herein.

IT IS SO ORDERED this 3rd day of August 2017.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE